This instrument was prepared by:

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL TO THE BEST OF OUR KNOWLEDGE GERSHMAN INVESTMENT CORP.

By_____

Loan No.: 00358421

MIN: 100083000000111965

[Space Above This Line For Recording Data]

# MORTGAGE

FHA Case No. 133-0109291-703

THIS MORTGAGE ("Security Instrument") is given on APRIL 30, 2004. The mortgagor is **DEBRA R. SIMPKINS, A SINGLE PERSON**

whose address is 721 SAINT NORBERT
EAST SAINT LOUIS, IL 62206                ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of PO Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**GERSHMAN INVESTMENT CORPORATION**
                                                                                                    ("Lender")
is organized and existing under the laws of       THE STATE OF ARKANSAS,
and has an address of 7 NORTH BEMISTON
CLAYTON, MO 63105
Borrower owes Lender the principal sum of
**EIGHTY-SIX THOUSAND FIVE HUNDRED FORTY-ONE AND 00/100**
Dollars (U.S. $    86,541.00   ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on     MAY 1, 2034     . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in ST. CLAIR                                                                                                    County, Illinois:
LOT NO. 7 OF "FIRST ADDITION TO FRIENDLY ACRES, A SUBDIVISION OF PART OF LOTS 5 & 12 IN THE EAST 1/2 SECTION 18 - TOWNSHIP 1 NORTH RANGE 8 WEST OF THE THIRD PRINCIPAL MERIDIAN, ST. CLAIR COUNTY, ILLINOS";
REFERENCE BEING HAD TO THE PLAT THEREOF RECORDED IN THE RECORDER'S OFFICE OF ST. CLAIR COUNTY, ILLINOIS, IN BOOK OF PLATS "52" ON PAGE 48.

EXCEPT COAL, GAS AND OTHER MINERAL RIGHTS EXCEPTED OR RESERVED IN PRIOR CONVEYANCES.

ILLINOIS - Single Family - FHA Security Instrument
Form 94114 1/96
Laser Forms Inc. (800) 446-3555
LFI #FHA94114-MERS 1/99           Page 1 of 7           Initials: D.S.

PLAINTIFF'S EXHIBIT 9

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct of consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower

ILLINOIS - Single Family - FHA Security Instrument
Form 94114 1/96
Laser Forms Inc. (800) 446-3555
LFI #FHA94114-MERS 1/99            Page 3 of 7        Initials: D.S.

shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to the Lender subordinating the lien to this Security instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.
9. **Grounds for Acceleration of Debt.**
    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
    (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:
        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.
    (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
    (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
    (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within

    from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to                         from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

ILLINOIS - Single Family - FHA Security Instrument
Form 94114 1/96
Laser Forms Inc. (800) 446-3555
LFI#FHA94114-MERS 1/99         Page 4 of 7      Initials: D. S.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal

ILLINOIS - Single Family - FHA Security Instrument
Form 94114 1/96
Laser Forms Inc. (800) 446-3555
LFI #FHA94114-MERS 1/99        Page 5 of 7        Initials: D.S.

laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney's fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Growing Equity Rider
☐ Graduated Payment Rider ☐ Planned Unit Development Rider
☒ Other [specify] Aggregate Escrow Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                    DEBRA R. SIMPKINS              -Borrower

_____    _____ (Seal)
                                                                   -Borrower

_____    _____ (Seal)
                                                                   -Borrower

_____    _____ (Seal)
                                                                   -Borrower

———————————————————— [Space Below This Line For Acknowledgment] ————————————————————

STATE OF ILLINOIS,                  ST. CLAIR                      County ss:

I, RAYMOND E GLATZ II , a Notary Public in and for said county and state,
do certify that
DEBRA R. SIMPKINS, A SINGLE PERSON

personally known to me to be the same person(s) whose name(s) is/are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she/they signed and delivered the said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this 30TH day of APRIL, 2004.

My Commission expires:

                                                                   - Notary Public

"OFFICIAL SEAL"
RAYMOND E. GLATZ II
NOTARY PUBLIC—STATE OF ILLINOIS
MY COMMISSION EXPIRES JUNE 26, 2005

ILLINOIS - Single Family - FHA Security Instrument
Form 94114 1/96
Laser Forms Inc. (800) 446-3555
LFI #FHA94114-MERS 1/99          Page 7 of 7

# NOTE

Multistate
LOAN NO. 00356421

FHA Case No. 133-0109291-703

APRIL 30 (Date) 2004   MIN NO. 100063000000111965

137 FREEDOM DR.
BELLEVILLE, IL 62226
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means GERSHMAN INVESTMENT CORPORATION,

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
EIGHTY-SIX THOUSAND FIVE HUNDRED FORTY-ONE AND 00/100
Dollars (U.S. $ 86,541.00    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE AND SEVEN EIGHTHS percent ( 5.875       %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on JUNE 1     , 2004     . Any principal and interest remaining on the first day of MAY 1      , 2034    , will be due on that date, which is called the "Maturity Date."

(B) Place
Payment shall be made at
7 N BEMISTON, ST. LOUIS, MO. 63105                    or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $    511.92    . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

FHA Multistate Fixed Rate Note - 10/95

Page 1 of 2                         Initials: D.S.

### 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent ( 4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

PAY TO THE ORDER OF:

Washington Mutual Bank, F.A.

Without Recourse
GERSHMAN INVESTMENT CORP.

_____
Kristy A. Nailor
--Assistant Secretary

_____ (Seal)
DEBRA R. SIMPKINS       -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

```
LESS NON-RECOVERABLE DEPRECIATION:            .00
LESS RECOVERABLE OVERHEAD & PROFIT:           .00
LESS DEDUCTIBLE:                         1,000.00
PAYMENT AMOUNT:                         14,824.04
```

MEMO: hail damage to dwelling

Mail To: DEBRA R SIMPKINS
137 FREEDOM DR
BELLEVILLE, IL 62226-5147

Check # 62257168

---

**AMERICAN SECURITY INSURANCE COMPANY**

11222 Quail Roost Drive
Miami, Florida 33157-6596
(305) 253-2244 / FAX (305) 252-6987

JPMORGAN CHASE BANK, N.A.
Syracuse, New York

50-937 / 213

Check # 62257168
Date Issued 05/22/2012

PAY ************$14,824.04

Pay to the Order of: WELLS FARGO HOME MORTGAGE AND DEBRA R SIMPKINS

Pay: Fourteen thousand eight hundred twenty four and 04/100 Dollars

| | |
|---|---|
| Insured | DEBRA R SIMPKINS |
| Claimant | DEBRA R SIMPKINS |
| Number | CHH020196304 |
| Claim No. | 00101128243 |
| Cause of Loss | HAIL |

Payment Type
Sub Producer Code 0CJ4000
Date of Loss 04/28/2012

⑆006225716⑆ ⑇021309379⑇ 6018407 13⑆



# ASSURANT
## Specialty Property

**American Security Insurance Company**
11222 Quail Roost Drive
Miami, FL 33157-6596
T 305.253.2244
F 305.252.6987
www.assurant.com

260 Interstate N. Circle, SE
Atlanta, GA 30339-2110
T 770.763.1000
F 305.971.1663

| | | | |
|---|---|---|---|
| **Pages:** (Including cover) | 5 | **Date:** | 06-01-2012 |
| **Attention:** | Debra Simpkins | **From:** | Candice Allen |
| **Fax Number:** | 618-416-5540 | **Sender's Phone:** | 800-937-4014 |
| **Company:** | Assurant | **Department:** | |
| **Copy:** | | | |
| **Regarding:** | Your Claim 00101128243, Adjuster's Worksheet attached. Thank You | | |

MAY 31,2012 23:19    ASSURANT GROUP

page 1

| INSURED  | : DEBRA SIMPKINS              | DATE OF REPORT   | : 5/14/2012         |
|----------|-------------------------------|------------------|---------------------|
| LOCATION | : 137 FREEDOM DR              | DATE OF LOSS     | : 4/28/2012         |
|          | : BELLEVILLE, IL 62226-5147   | POLICY NUMBER    | : CHH020196304      |
| COMPANY  | : American Security Insurance Co | CLAIM NUMBER  | : 00101128243       |
|          |                               | OUR FILE NUMBER  | : 00101128243       |
|          |                               | ADJUSTER NAME    | : STENSHOEL, DAVE   |

## ESTIMATE TOTALS

| ESTIMATE TOTAL PAGE ITEMS | RCV | DIFF | ACV |
|---|---:|---:|---:|
| **Repair Item Totals** | $18,014.71 | $5,225.08 | $12,789.63 |
| General Contractor Overhead (10.0%) | $1,801.47 | $522.51 | $1,278.96 |
| General Contractor Profit (10.0%) | $1,801.47 | $522.51 | $1,278.96 |
| Estimate Totals With O&P | $21,617.65 | $6,270.10 | $15,347.55 |
| Applicable Sales Tax Rate: 8.25% (Includes M) | $722.78 | $246.29 | $476.49 |
| Estimate Grand Totals | $22,340.43 | $6,516.39 | $15,824.04 |
| Less Deductible | ($1,000.00) | | ($1,000.00) |
| **BUILDING FINAL TOTALS** | **$21,340.43** | **$6,516.39** | **$14,824.04** |

| | |
|---|---:|
| **RECOVERABLE DEPRECIATION** * | $6,516.39 |
| **NON-RECOVERABLE DEPRECIATION** | $0.00 |

*This amount represents the total recoverable depreciation for this estimate. Any payable recoverable depreciation is subject to policy coverage limit. Please check policy coverage limit prior to issuing any recoverable depreciation reimbursements.

| INSURED | : DEBRA SIMPKINS | DATE OF REPORT | : 5/14/2012 |
|---|---|---|---|
| LOCATION | : 137 FREEDOM DR | DATE OF LOSS | : 4/28/2012 |
| | : BELLEVILLE, IL 62226-5147 | POLICY NUMBER | : CHH020196304 |
| COMPANY | : American Security Insurance Co | CLAIM NUMBER | : 00101128243 |
| | | OUR FILE NUMBER | : 00101128243 |
| | | ADJUSTER NAME | : STENSHOEL, DAVE |

| | | | |
|---|---|---|---|
| **Repair Item Totals** | $18,014.71 | $5,225.08 | $12,789.63 |
| General Contractor's Overhead (10.0%) | $1,801.47 | $522.51 | $1,278.96 |
| General Contractor's Profit (10.0%) | $1,801.47 | $522.51 | $1,278.96 |
| Estimate Totals With OHP | $21,617.65 | $6,270.10 | $15,347.55 |
| Applicable Sales Tax | $722.78 | $246.29 | $476.49 |
| Estimate Grand Totals | $22,340.43 | $6,516.39 | $15,824.04 |
| Policy Deductible | ($1,000.00) | | ($1,000.00) |
| **BUILDING FINAL TOTALS** | $21,340.43 | | $14,824.04 |
| Recoverable Depreciation | | $6,516.39 | |
| Non-Recoverable Depreciation | | | |

SMSOL®
Form CEST-1/4.0-SP3  Assurant

Page: 2

page 4

MAY 31,2012 23:20   ASSURANT GROUP

| INSURED  | : DEBRA SIMPKINS | DATE OF REPORT | : 5/14/2012 |
|---|---|---|---|
| LOCATION | : 137 FREEDOM DR | DATE OF LOSS | : 4/28/2012 |
|  | : BELLEVILLE, IL 62226-5147 | POLICY NUMBER | : CHH020196304 |
| COMPANY | : American Security Insurance Co | CLAIM NUMBER | : 00101128243 |
|  |  | OUR FILE NUMBER | : 00101128243 |
|  |  | ADJUSTER NAME | : STENSHOEL, DAVE |

**Estimate Section:** Exterior

| Front/ Rear: | 896.00 SF | (Rectangle: 56' x 8') |
|---|---|---|
| Right/ Left: | 448.00 SF | (Rectangle: 28' x 8') |

Total Wall SQFT:   1344.00 SF

| Quantity | Description | Unit Cost | RCV | DEP | % | ACV |
|---|---|---|---|---|---|---|
| 1344.0 SF | Remove 8" Straight Insulated Aluminum Exterior Siding | $0.96 | $1,290.24 |  |  | $1,290.24 |
| 1344.0 SF | Replace 8" Straight Insulated Aluminum Exterior Siding (Age: 45.0) | $3.65 | $4,905.60 | $2,452.80 | 50.0% | $2,452.80 |
| 80.0 LF | Remove Ext. Frame/Trim Metal Wrap | $1.37 | $109.60 |  |  | $109.60 |
| 80.0 LF | Replace Ext. Frame/Trim Metal Wrap (Age: 45.0) 5 windows | $6.86 | $548.80 | $274.40 | 50.0% | $274.40 |
| 172.0 LF | Remove Gutters | $0.59 | $101.48 |  |  | $101.48 |
| 172.0 LF | Replace Gutters (Age: 15.0) | $5.99 | $1,030.28 | $515.14 | 50.0% | $515.14 |
| 172.0 LF | Remove Stainless Steel Guard for Gutters | $0.46 | $79.12 |  |  | $79.12 |
| 172.0 LF | Replace Stainless Steel Guard for Gutters (Age: 15.0) | $4.04 | $694.88 | $347.44 | 50.0% | $347.44 |
| 48.0 LF | Remove Downspout | $0.36 | $17.28 |  |  | $17.28 |
| 48.0 LF | Replace Downspout (Age: 15.0) | $5.40 | $259.20 | $129.60 | 50.0% | $129.60 |
| 2.0 PR | Remove and Reinstall Shutters | $15.85 | $31.70 |  |  | $31.70 |
|  | **Totals For Exterior** |  | **$9,068.18** | **$3,719.38** | **41.0%** | **$5,348.80** |

**Estimate Section:** Roof

| Square/Rectangle: | 18.56 SQ | (Rectangle: 58' x 32') |
|---|---|---|
| Total Squares: | 18.56 SQ | (18.56 with 0.00% waste) |

| Quantity | Description | Unit Cost | RCV | DEP | % | ACV |
|---|---|---|---|---|---|---|
| 21.4 SQ | Replace Composition Shingles (Age: 4.0) Price includes dumpster and felt | $192.78 | $4,125.49 | $825.10 | 20.0% | $3,300.39 |
| 18.6 SQ | Remove Composition Shingles | $47.59 | $885.17 |  |  | $885.17 |
| 9.4 SQ | Remove Modified Bitumen Roll Roofing | $53.67 | $504.50 |  |  | $504.50 |
| 10.3 SQ | Replace Modified Bitumen Roll Roofing (Age: 4.0) Carport and rear porch roofs | $298.25 | $3,071.98 | $614.40 | 20.0% | $2,457.58 |
| 36.0 LF | Remove Cobra Ridge Vent | $0.54 | $19.44 |  |  | $19.44 |
| 36.0 LF | Replace Cobra Ridge Vent (Age: 4.0) | $8.10 | $291.60 | $58.32 | 20.0% | $233.28 |
| 1.0 EA | Remove Plumbing Boot (Cone) | $3.57 | $3.57 |  |  | $3.57 |
| 1.0 EA | Replace Plumbing Boot (Cone) (Age: 4.0) | $11.85 | $11.85 | $2.37 | 20.0% | $9.48 |
| 1.0 EA | Remove Vent Cowl Cap | $5.37 | $5.37 |  |  | $5.37 |
| 1.0 EA | Replace Vent Cowl Cap (Age: 4.0) | $27.56 | $27.56 | $5.51 | 20.0% | $22.05 |
|  | **Totals For Roof** |  | **$8,946.53** | **$1,505.70** | **16.8%** | **$7,440.83** |

SIMSOL®
Form CEST-1/4.0-SP3  Assurant

Page: 1

MAY 31, 2012  23:20    ASSURANT GROUP

page 3

| INSURED | : DEBRA SIMPKINS | DATE OF REPORT | : 5/14/2012 |
|---|---|---|---|
| LOCATION | : 137 FREEDOM DR | DATE OF LOSS | : 4/28/2012 |
| | : BELLEVILLE, IL 62226-5147 | POLICY NUMBER | : CHH020196304 |
| COMPANY | : American Security Insurance Co | CLAIM NUMBER | : 00101128243 |
| | | OUR FILE NUMBER | : 00101128243 |
| | | ADJUSTER NAME | : STENSHOEL, DAVE |

# BUILDING ESTIMATE

## ESTIMATE RECAP

| | | | |
|---|---|---|---|
| Estimate Grand Totals: | $22,340.43 | | |
| Total Depreciation: | $6,516.39 | Recoverable Depreciation: | $6,516.39 |
| A.C.V. Estimate Totals: | $15,824.04 | Non-Recoverable Depreciation: | $0.00 |
| Policy Deductible: | $1,000.00 | Total Depreciation: | $6,516.39 |
| Final Totals: | $14,824.04 | | |

## ESTIMATE COMMENTS

SIMSOL®
Form EST-1/4.0-8P3  Assurant

Cover Page