UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:11-cv-81373-DMM

MARK KUNZELMANN; on behalf of
himself and all others similarly situated;

    Plaintiff,

v.

WELLS FARGO BANK, N.A.; WELLS
FARGO INSURANCE, INC.; ASSURANT,
INC. (d/b/a ASSURANT SPECIALTY
PROPERTY); and AMERICAN SECURITY
INSURANCE COMPANY

    Defendants.
_____/

### DECLARATION OF RONALD K. WILSON

    1.    My name is Ronald K. Wilson. I make this Declaration pursuant to the provisions of 28 U.S.C. § 1746. The statements set forth in this Declaration are based upon my personal knowledge, or are based upon a personal review of the business records of American Security Insurance Company ("ASIC"). I am over 21 years of age and competent to testify to the statements set forth in this Declaration. My business address is 260 Interstate N. Circle, SE, Atlanta, GA 30339-2110.

    2.    I am the Vice President of Account Management at Assurant Specialty Property, an operating division providing management and other services to ASIC. My duties include managing the mortgage insurance program for Wells Fargo Bank, N.A. ("Wells Fargo"). I have reviewed the Class Action Complaint ("Complaint") in this case.

    3.    I make this declaration in order to describe the circumstances surrounding ASIC's issuance of hazard insurance coverage to protect the improvements on real property that are the subject of a Mortgage between Mr. Mark Kunzelmann and Martha Kunzelmann, his wife, and the lender, Wells Fargo Bank, N.A.

1


PLAINTIFF'S EXHIBIT 11

4. I am familiar with ASIC's operations and its organization. ASIC is a Delaware corporation whose principal place of business is Atlanta, Georgia. ASIC is an indirect subsidiary of Assurant, Inc., a public holding company. ASIC's immediate parent is Interfinancial Inc. ASIC maintains separate books and accounts from Assurant, Inc. ASIC pays its own bills and legal fees, enters into its own business arrangements, and funds its own operations without capital contributions from Assurant, Inc. ASIC does not act as Assurant, Inc.'s agent, and Assurant, Inc. does not operate as ASIC's agent.

5. I am familiar with ASIC's duties to track borrower compliance with insurance obligations and to place lender-placed insurance for Wells Fargo loan servicing portfolio. ASIC's duties in this regard arise under a Master Services Agreement between ASIC, Standard Guaranty Insurance Company, and Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. The Master Services Agreement is dated as of August 1, 2004, as amended, and includes Statements of Work Nos. 1 and 2 (as amended in 2006 and 2010). Attached hereto as Exhibit A is a true and correct copy of that agreement, which is retained as a business record of ASIC and maintained in the ordinary course of business.

6. I have reviewed ASIC's business records regarding Mr. Kunzelmann's loan with Wells Fargo, which include information such as the terms and limits of Mr. Kunzelmann's ASIC insurance coverage, as well as the premiums charged and/or collected for such coverage.

7. My review and analysis of Mr. Kunzelmann's insurance placement record reveals one instance where Mr. and Mrs. Kunzelmann allowed their voluntary insurance coverages to lapse, and Wells Fargo purchased an ASIC policy of insurance covering hazard and wind exposures on Mr. Kunzelmann's real property located in North Palm Beach, Florida. In this instance, once Mr. Kunzelmann provided evidence of other acceptable insurance coverage, Wells Fargo directed ASIC to cancel the ASIC insurance policy and ASIC provided a partial premium refund to Wells. A partial refund occurs when, during the term of an ASIC policy, an insured provides evidence of other acceptable insurance coverage for the property in question but where there was an interruption in the continuous coverage required by the security instrument. The premiums are refunded for the time period for which the insured was able to provide proof of other coverage.

8. The Wells Fargo and ASIC records reflect that the Kunzelmann real property located in North Palm Beach, Florida was insured by Fidelity National Insurance Company

through January 31, 2011. The Kunzelmanns did not provide Wells Fargo with any evidence that they had renewed their Fidelity National policy, or had purchased alternative coverage, commencing as of January 31, 2011. In early March 2011 representatives of ASIC made telephonic inquiries to the Kunzelmann's former insurer Fidelity National, as well as their insurance agent Gracy-Baker Insurance Agency, seeking evidence of the hazard and wind coverages on the Kunzelmann residence required by the Kunzelman – Wells Fargo Mortgage. This Mortgage is a public record.[1]

9. According to Wells Fargo and ASIC records, when no satisfactory evidence of insurance coverage was provided by the Kunzelmanns, ASIC on behalf of Wells Fargo mailed a Notice of Expiration of Insurance to Mr. Kunzelmann on March 14, 2011 at ▮▮▮▮▮▮▮▮▮▮▮, North Palm Beach, Florida 33408-4804, advising Mr. Kunzelmann that his homeowner's insurance policy had expired and requesting Mr. Kunzelmann provide proof of current coverage. Attached hereto as Exhibit B is a true and correct copy of that notice, which is retained as a business record of ASIC and maintained in the ordinary course of business.

10. ASIC on Wells Fargo's behalf mailed to Mr. Kunzelmann a second Notice of Expiration of Insurance on June 29, 2011 to the same address. Attached hereto as Exhibit C is a true and correct copy of that notice, which is retained as a business record of ASIC and maintained in the ordinary course of business.

11. On July 14, 2011, ASIC on Wells Fargo's behalf mailed to Mr. Kunzelmann at the same address a Notice of Temporary Hazard Insurance and an ASIC insurance binder (No. ▮▮▮▮▮▮▮▮▮2504) effective for sixty days. Attached hereto as Exhibit D is a true and correct copy of that notice and binder, which is retained as a business record of ASIC and maintained in the ordinary course of business.

12. On August 26, 2011, ASIC on Wells Fargo's behalf mailed to Mr. Kunzelmann at the same address a Notice of Hazard Insurance and an ASIC Residential Property Additional Insured Endorsement (Policy No. ▮▮▮▮▮▮▮2685), effective January 31, 2011, and expiring January 31, 2012. Attached hereto as Exhibit E is a true and correct copy of that notice and

---

[1] *See* Mortgage between Mark Kunzelmann and Martha Kunzelmann, husband and wife, and Wells Fargo bank, N.A., dated January 18, 2011, recorded in OR Book 24353, at page 0237 (17 pages) of the public records of Miami-Dade County, Florida.

3

policy contract, which is retained as a business record of ASIC and maintained in the ordinary course of business. The ASIC policy provided wind and hazard coverages in the amount of $672,000, for an annual premium charge of $18,522.04.

13. Mr. Kunzelmann provided evidence of hazard insurance coverage from Fidelity National Property & Casualty Insurance Company (Fidelity Policy No. ████8948) effective as of August 25, 2011, in the amount of $590,000.00. Mr. Kunzelmann also provided evidence of windstorm (not including hail) coverage from Citizens Property Insurance Corp. (Policy No. ████████0000) effective as of May 27, 2011, in the amount of $570,000. Attached hereto as Exhibit F are true and correct copies of those policy contracts, which are retained as business records of ASIC and maintained in the ordinary course of business. Based on this proof of coverage, ASIC cancelled Policy No. ████████2685 as of August 25, 2011, and provided an unearned premium refund of $8,075.54.

14. In addition to the written communications detailed above, Mr. Kunzelmann engaged in several telephone conversations with representatives of ASIC on Wells Fargo's behalf. According to ASIC records, Mr. Kunzelmann received a message on March 18, 2011, requesting he contact Wells Fargo and provide evidence of insurance coverage. On September 2, 2011, Mr. Kunzelmann telephoned a representative to inquire about the Notice of Hazard Insurance he had received in the mail, indicating coverage had been placed for him effective January 31, 2011, when his prior coverage with Fidelity National had expired. Mr. Kunzelmann telephoned again on October 14, 2011 to inquire about the ASIC insurance coverage for the period January 31, 2011 to August 25, 2011. During such conversation, a representative asked Mr. Kunzelmann, "you are aware of the fact that there was, in fact, a gap in coverage?", to which Mr. Kunzelmann replied, "yes, I am." (Rec'g of Oct. 14, 2011 Conversation between M. Kunzelmann and C. Morris, at 5:20-23.) The representative told Mr. Kunzelmann that a refund for this time period could be processed only if he provided to Wells Fargo evidence of coverage from January 31, 2011, to August 25, 2011, when his Fidelity policy became effective. Mr. Kunzelmann replied, "there wasn't" any evidence of prior coverage because "[his wife] let it lapse." He further explained that his wife "didn't pay the homeowners" and "it lapsed." (Id. at 3:36-4:05.) True and correct copies of recordings of telephone conversations between Mr. Kunzelmann and representatives of ASIC, which are retained as business records of ASIC and maintained in the ordinary course of business, are filed separately (see Notice of Filing).

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on January 24, 2012.

*Ronald K. Wilson*
RONALD K. WILSON

200025v2Mia