IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DEBRA SIMPKINS, MARK BIDDISON,
and JAMES COCKES, individually and
on behalf of all others similarly situated,

Plaintiffs,

v.

WELLS FARGO BANK, N.A., WELLS
FARGO INSURANCE CO., ASSURANT,
INC., STANDARD GUARANTY INSURANCE
CO., and AMERICAN SECURITY
INSURANCE CO.,

Defendants.                         No. 12-cv-00768-DRH-PMF

<u>MEMORANDUM AND ORDER</u>

HERNDON, Chief Judge:

## I.    <u>Introduction and Background</u>

Pending now before the Court are a multitude of motions to dismiss filed by the various defendants in this putative class action:  defendant American Security's motion to dismiss plaintiff Simpkins' claims (Doc. 91) and its memorandum in support (Doc. 92); American Security's motion to dismiss plaintiff Biddison's claims (Doc. 93) and its memorandum in support (Doc. 94); defendant Assurant's motion to dismiss the first amended complaint (Doc. 95) and its memorandum in support (Doc. 96); defendant Wells Fargo Bank and Wells Fargo Insurance Company's (collectively "Wells Fargo")'s motion to dismiss Simpkins' claims for failure to state a claim and for lack of subject matter jurisdiction (Doc. 97) and their memorandum in support (Doc. 98); Wells Fargo's

motion to dismiss Biddison and plaintiff Cockes' claims (Doc. 102) and their memorandum in support (Doc. 103); and defendant Standard Guaranty Insurance Company's motion to dismiss Cockes' claims (Doc. 124) and its memorandum in support (Doc. 125).

Plaintiffs have filed their oppositions to defendants' various motions to dismiss:  Plaintiffs Biddison and Cockes oppose Wells Fargo's motion to dismiss their claims (Doc. 128); plaintiffs Simpkins and Biddison oppose American Security's motion to dismiss plaintiff Simpkins' claims and Biddison's claims (Doc. 129); all plaintiffs oppose Assurant's motion to dismiss the first amended complaint (Doc. 130); Simpkins opposes Wells Fargo's motion to dismiss her claims for failure to state a claim and for lack of subject matter jurisdiction (Doc. 131); and Cockes opposes Standard's motion to dismiss his claims (Doc. 145). For the reasons stated below, the Court **DENIES** all defendants' motions to dismiss.

**The Plaintiffs**

Plaintiff Debra Simpkins, a resident of Belleville, Illinois, claims that when her homeowners policy was not renewed effective April 30, 2007, Wells Fargo force-placed a temporary 60-day insurance binder with American Surety at an annual premium of $1,141.00.  Simpkins claims the force-placed policy was more than twice the cost of her previous policy and provided less coverage, protected only Wells Fargo, and covered only the structure of the home.  Although the policy was not placed until June 7, 2007, it was backdated to April 30, 2007.  On July

17, 2007, Simpkins claims Wells Fargo force-placed an additional policy on her dwelling effective from April 30, 2007 through April 30, 2008 with the same annual premium of $1,141.00 as the 60 day force-placed policy. and the same coverage only for the dwelling and protecting only Wells Fargo.   Simpkins contends that Wells Fargo received a commission or other financial benefit from Assurant and/or American Security connected to the force-placed policy. Subsequently, Simpkins obtained her own non-force-placed hazard insurance policy and on October 18, 2007, Wells Fargo issued a notice of cancellation as to the previously force-placed coverage through American Security.   Simpkins subsequently filed for Chapter 7 bankruptcy relief on January 8, 2008.   At the time she filed for bankruptcy, Simpkins was unaware of her claims against defendants.

On May 10, 2010, plaintiff Mark Biddison, a resident of New York, received a notice of non-renewal of his homeowner's insurance policy that his coverage would expire on July 3, 2010.   Wells Fargo filed a foreclosure proceeding against Biddison's property in September 2010.   Subsequently, Wells Fargo force-placed an insurance policy through American Security on Biddison's property. Biddison claims his force-placed policy was backdated to July 3, 2010 and Wells Fargo added a debit of $4,483.00 to his escrow account to cover the cost of the coverage.     Biddison   claims   that   the   force-placed   policy   had   a   premium significantly higher than that of his previous policy, and provided coverage only to the structure of the house and protected Wells Fargo only.   On July 27, 2011,

Wells Fargo accepted Biddison's application for a loan modification. When he received his loan modification settlement statement, Biddison's outstanding principal had increased over $30,000.00, including a negative balance from his escrow account, which included the charges for the force-placed insurance policy. In June 2012, Biddison obtained his own homeowners policy for $1,356, for substantially more coverage. Biddison contends that Wells Fargo received a financial benefit for force-placing the insurance that is a breach of fiduciary duty and contrary to the doctrine of good faith and fair dealing.

Plaintiff James Cockes, a resident of Frisco, Texas, had a homeowners insurance policy in place from July 28, 2010, until July 28, 2011. The policy had an annual premium of $2,401.42. On or about September 28, 2011, Wells Fargo sent Cockes a letter stating that its records indicated his policy had lapsed in September 2011, and that Standard Guaranty had issued temporary coverage for two months at an annual cost of $7,688.65. The coverage extended only to the building and structure. Cockes secured his own policy to cover October 15, 2011 to October 15, 2012, with an annual premium of $2,563.00. Cockes alleges that although he provided proof of this to Wells Fargo, it force-placed a policy from Security Guaranty backdated more than a year to cover Cockes' property from September 2010 to September 2011 and charged his escrow account $7,688.65. Cockes also alleges that Wells Fargo received a financial benefit from force-placing the insurance coverage with Security Guaranty.

**The Defendants**

Defendants are Wells Fargo Bank, which originates and/or services residential mortgage loans, sometimes doing business as Wells Fargo Home Mortgage; Wells Fargo Insurance, an affiliate of Wells Fargo Bank and Wells Fargo Home Mortgage (collectively "Wells Fargo"); Assurant, Inc.; American Security Insurance Company; Standard Guaranty Insurance Company; and any other force-place insurance provider subsidiary of Assurant.

**The Complaint**

This is a putative class action brought by plaintiffs Simpkins, Biddison, and Cockes, on behalf of themselves and other similarly situated plaintiffs. Plaintiffs filed this case July 6, 2012 and amended their complaint on January 15, 2013.  All of the plaintiffs allege they have residential mortgage loans that originated with Wells Fargo Home Mortgage, and allege that they were required to pay for lender-placed or "force-placed" hazard insurance policies provided by Assurant, American Security, Standard Guaranty or other force-placed subsidiaries of Assurant.  Additionally, plaintiffs allege Wells Fargo charged them for backdated policies and that Wells Fargo received a commission for the significantly higher priced policies providing substantially less coverage.

Based on the foregoing, plaintiffs allege six causes of action on behalf of themselves and various putative classes of plaintiffs.

(1)    Breach of contract including breach of the implied covenant of good faith and fair dealing against Wells Fargo:  The plaintiffs' mortgage contracts with

Wells Fargo permitted the placement of force-placed insurance if necessary in a reasonable manner to protect Wells Fargo's interest in the secured property.  The contract do not authorize Wells Fargo to place backdated insurance for periods of time that have expired, or to force borrowers to pay substantially greater premiums to allow for the kickbacks that Wells Fargo accepted from the force-placed insurance provider that it selected.  Wells Fargo breached the contract by engaging in these activities.  Wells Fargo also breached the covenant of good faith and fair dealing by failing to seek competitive bids on the open market or otherwise making good faith efforts to reasonably exercise its discretion, instead "selecting force-placed insurance providers according to pre-arranged secret deals the insurance policies are continually purchased at excessive costs through the same companies in order to produce additional profits for Wells Fargo."

(2)     Unjust enrichment/disgorgement against all defendants:  Plaintiffs claim it would be unjust and inequitable to allow Wells Fargo to retain the commissions it received as a result of the placements of force-placed insurance with specific providers in accordance with pre-arranged agreements for kickbacks from the insurance companies.  Defendants would be unjustly enriched if they are allowed to keep these ill-gotten gains acquired as a result of the wrongful conduct.  Plaintiffs are entitled to restitution and disgorgement of the profits defendants realized due to defendants' unfair, unlawful, and/or deceptive practices.

(3)     Breach of fiduciary duty/misappropriation of funds held in trust against Wells Fargo:  Pursuant to plaintiffs' mortgages, Wells Fargo holds and

controls funds in escrow.   The funds are used to pay taxes, assessments, insurance premiums, and other items delineated in the borrowers' mortgages. Any excess in the escrow accounts is to be returned to the borrowers in accordance with the terms of the mortgages.   Wells Fargo owed plaintiffs and other members of the class the highest fiduciary duty in regard to handling these funds.  Wells Fargo breached that duty by:  (a) using the escrow funds to purchase force-placed insurance at inflated costs and for inflated amounts to generate additional profits for defendants; (b) profiting from unnecessary and excessive force-placed insurance policies that were purchased from escrow funds at plaintiffs' expense; (c) using the escrow funds to pay for unnecessary and duplicative insurance to increase defendants' profits; and (d) improperly depleting the escrow funds for unnecessary, unauthorized and duplicative hazard insurance that resulted in additional costs and injury to plaintiffs and members of the class.

(4)    Aiding and abetting a breach of fiduciary duty against Assurant, Standard Guaranty and American Security:  Assurant, Standard Guaranty, and American Security actively induced and/or participated in Wells Fargo's breach of fiduciary duties by offering Wells Fargo the opportunity to gain additional profits through a plan to force-place insurance on borrowers serviced by Wells Fargo. Assurant, Standard Guaranty, and American Security accomplished this by providing unnecessary, duplicative and overpriced force-paced insurance and tracking services to Wells Fargo borrowers in exchange for kickbacks, sham commissions, fees for sham services, and "rebates" paid to Wells Fargo.

(5)      Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act against all defendants on behalf of the Illinois class:  Wells Fargo failed to make any effort to maintain borrowers' existing insurance policies, instead purchasing and charging borrowers for force-placed insurance from specific providers only, in order to maximize gains to defendants.  The selection of the force-placed insurance was in bad faith, according to secret deals, deceptively designed to hide the true costs from Simpkins and the Illinois plaintiffs.  Defendants misrepresented that the charges imposed for the force-placed insurance were to protest the borrowers' and defendants' mutual interests in the property, and engaged in other unfair or unlawful conduct in the course of the conduct of business, trade, or commerce in Illinois.  Defendants' deceptive acts are part of a pattern of conduct to defraud consumers, that is ongoing and likely to harm the public.   Defendants' deceptive acts were directed to and affected consumers of mortgage and home insurance products in Illinois.  The deceptive acts have a broad, adverse impact on consumers, including Simpkins and the Illinois class members.  Simpkins and the Illinois class members were injured as a direct or proximate result of defendants' deceptive acts or practices.  Simpkins and the Illinois class members seek recovery of actual damages, injunctive relief, costs and attorneys' fees pursuant to 815 ILCS 505/1 *et seq*.

(6)      Violations of the New York General Business Law § 349 against all defendants on behalf of the New York class:  Defendants' business practices alleged in the complaint are deceptive acts or practices in violation of N.Y. General

Business Law § 349.  Defendants failed to make any effort to maintain borrowers' existing insurance policies, instead purchasing and charging borrowers for force-placed insurance from providers of defendants' choice.  These policies had substantially higher premiums for significantly less coverage.  Defendants used discretion to select a force-placed insurance provider and policy in bad faith and in contravention of the parties' reasonable expectations by forcing borrowers to pay more than necessary to protect the lender's property interest.  Defendants backdated insurance policies to cover time periods that had already passed, and for which there was no risk of loss.  Defendants assessed excessive, unreasonable, and unnecessary insurance policy premiums against Biddison and the New York Class members.  Defendants' deceptive acts or practices constituted consumer oriented conduct that was directed to, and affected, consumers of mortgage and home insurance products, including Biddison and the New York class members.

**The Motions to Dismiss**

Defendants collectively and individually dispute plaintiffs' allegations.  Wells Fargo (Doc. 97) asserts that Simpkins' claim should be dismissed because:  (1) she lacks standing with respect to any of her claims arising from insurance placed prior to August 9, 2009 due to her bankruptcy filing; (2) she is judicially estopped from pursuing her claims due to her failure to disclose them in her bankruptcy; (3) she does not and cannot identify any provision of her mortgage agreement allegedly breached by Wells Fargo; (4) the majority of her claims are time-barred

and fail to state a claim upon which relief can be granted; and (5) all of her claims are preempted by the National Bank Act.

In their motion to dismiss Biddison's and Cockes' claims (Doc. 102), Wells Fargo asserts that Biddison's and Cockes' claims should be dismissed because: (1) they do not plead any provision of their respective mortgage and deed of trust that Wells Fargo breached; (2) they fail to state any claim for unjust enrichment because they plead no facts suggesting retention of the lender placed insurance premiums paid would be unjust; (3) they fail to state any claim for breach of fiduciary duty as a lender owes no such duty under either Texas or New York; (4) Biddison fails to state any violation of the New York General Business Law; (5) Biddison's claims are barred by they filed-rate doctrine; and (6) all of Biddison's and Cockes' claims are preempted by the National Bank Act.

Defendant American Security filed its motion to dismiss Simpkins' claims (Doc. 91), asserting that: (1) Simpkins' claims belong to her bankruptcy estate, not to her; (2) Simpkins' unjust enrichment claim is time-barred, governed by express contracts and she cannot establish that she conferred a benefit on American Security; (3) Simpkins' aiding and abetting claim is time-barred, Illinois law does not create a fiduciary duty between Wells Fargo and Simpkins, and she fails to plead the required elements of her claim; (4) Simpkins' claim for violation of the Illinois Consumer Fraud & Deceptive Business Practices Act is time-barred, she cannot establish a deceptive act or practice by American Security, she cannot establish actual damages, and she cannot establish that American Security

proximately caused her any injury; and (5) the complaint fails to meet minimum pleading standards.

In American Security's motion to dismiss Biddison's claims (Doc. 93), it argues that: (1) All of Biddison's claims are precluded by the filed rate doctrine; (2) all of Biddison's claims are barred due to improper venue; (3) Biddison fails to state a claim for unjust enrichment under New York law; (4) Biddison fails to state a claim for aiding and abetting a breach of fiduciary duty under New York law;

Defendant Assurant filed a motion to dismiss the first amended complaint, claiming: (1) plaintiffs have sued the wrong party; (2) Assurant does not have "continuous and systematic" contacts with Illinois; (3) Biddison's and Cockes' claims are barred for improper venue; (4) Simpkins' claims are barred because they are owned by her bankruptcy estate; and (5) the claims in counts two, four, five, and six are barred by New York's filed rate doctrine and because plaintiffs have failed to plead their elements.

## II.   <u>Standard</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must give the defendant fair notice of the claim and the grounds on which it is based. *Id.* However, a plaintiff is obligated to provide the grounds of his or her entitlement to relief in more detail than mere "labels and conclusions;"

factual allegations must be sufficient to provide a right to relief that is not merely speculative.  *Id.*

In a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, accepting as true all facts alleged if they are well-pleaded. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).  All possible inferences are drawn in favor of the plaintiff.  *Id.*  A complaint should be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.  *Bell Atlantic*, 550 U.S. at 561.

### III.   Analysis

The Court views the facts in the light most favorable to each plaintiff in relation to the various motions to dismiss.

**Plaintiff Simpkins' Bankruptcy Claim and Standing**

Both Wells Fargo and American Security claim that Simpkins' subsequent bankruptcy extinguishes her claims and eliminates her standing to bring those claims.  Defendants argue that Simpkins' trustee in the bankruptcy proceeding owns the claim and is the real party in interest thereto.  Defendants ask this Court to rule that Simpkins is judicially estopped from bringing her claims against them.

A plaintiff's standing determines a court's jurisdiction to hear a suit and is a necessary component of Article III's case-or-controversy requirement.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Thus, standing must be present

at all stages of the litigation.  *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010).   A plaintiff has standing to sue when she alleges a "distinct and palpable injury" that is capable of being redressed if her request for relief is granted.   *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982).

Defendants do not appear to be arguing that Simpkins lacks constitutional standing.  Her complaint clearly alleges an injury traceable to defendants' actions. It appears that defendants are arguing instead that Simpkins lacks prudential standing because she is not the real party in interest.   Unlike constitutional standing, defects in prudential standing do not act as limits on a court's subject matter jurisdiction. 6A Wright & Miller, Federal Practice and Procedure § 1542 (2d ed. 2009).

Here, Simpkins attempted to cure her standing by reopening her bankruptcy case, and filing a motion seeking the bankruptcy court to require the trustee to abandon Simpkins' claim back to her.  The bankruptcy court denied the motion with leave to refile.  And although the trustee and Wells Fargo appear to have signed an agreement for the resolution of Simpkins' action, the Court has no evidence before it that the bankruptcy court has approved said agreement. Viewing the facts most favorably to Simpkins, at this stage in the proceedings, the Court finds that Simpkins' claims are not foreclosed by the ongoing bankruptcy proceeding and she may still be the party in interest.

**Unjust Enrichment**

Wells Fargo argues that Simpkins fails to allege the elements of an unjust enrichment theory.  In its motion, Well Fargo contends that to support an unjust enrichment claim, there must be a duty owed to the plaintiff and breach of that duty.  Wells Fargo asserts that Simpkins fails to allege and fails to prove that they unjustly retained a benefit to Simpkins' detriment, and that the retention of such violated the principles of justice, equity and good conscience.

American Security also challenges Simpkins' claim of unjust enrichment, arguing that written contracts govern the parties' relationships and that the claim is time barred.  American Security  argues that its relationship with Simpkins was governed by the insurance policy it issued to her, and that Simpkins cannot establish that she conferred a benefit on it that it should equitably return.

"A claim in quasi-contract is established when the defendant has unjustly retained a benefit to the plaintiff's detriment, and … defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Midcoast Aviation Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 737 (7th Cir. 1990) (internal citations and quotations omitted).  Quasi-contractual duties arise only in situations of unjust enrichment, situations where one party has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and which on the merits belongs to another.  *Id.*

In the first amended complaint, Simpkins and the other plaintiffs allege that they have conferred a substantial benefit on all the defendants, including Wells Fargo, from the force-placed insurance premiums they paid.   Plaintiffs claim that these payments made to American Security were excessive and far above market prices, and that American Security paid "significant monies in illegal kickbacks, commissions, and referral fees directly to Wells Fargo in order to be able to exclusively provide force-placed insurance policies at unreasonable rates."   Plaintiffs contend that defendants will be unjustly enriched if they are allowed to retain these excessive overpayment of premiums.

Since plaintiffs' allegations are that they paid excessive premiums for the force-placed insurance policies in order that Wells Fargo could receive a "kickback" benefit, and the Court must draw all inferences in favor of the plaintiffs, then plaintiffs' complaint sufficiently alleges the elements of an unjust enrichment claim.   Plaintiffs incurred a detriment and defendants retained a benefit.

Defendants also argue that plaintiffs cannot claim a quasi-contract when there is a specific contract governing the relationship of the parties, because while federal law allows a plaintiff to plead in the alternative, Illinois law does not.   In support of this, defendants point the Court to an Illinois state case, *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 68 Ill. 2d 375, 391 (1977) (stating that the doctrine of unjust enrichment has no purpose when there is a specific contract in place). However, the Seventh Circuit holds that the standards of Rule 8 of the Federal

Rules of Civil Procedure, rather than Illinois fact pleading requirements, should apply in federal court. *Windy City Metal Fabricators & Supply, Inc., v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). "A federal court sitting in diversity applies federal pleading requirements even when the claim pleaded arises under state rather than federal law." *Id.* Thus, the Court finds no merit in defendants' argument, and Wells Fargo's and American Security's motion to dismiss count two is denied.

**Breach of Fiduciary Duty**

In its motion to dismiss, Wells Fargo contends that Simpkins failed to adequately plead a claim for breach of fiduciary duty in that she did not prove the elements. Both Wells Fargo and Simpkins agree that under Illinois law the three elements that must be proved are: "[1] a fiduciary duty exists, [2] that the fiduciary duty was breached, and [3] that such breach proximately caused the injury of which the plaintiff complains." *Gross v. Town of Cicero*, 619 F.3d 697, 709 (7th Cir. 2010). However, Wells Fargo contends that no such fiduciary duty existed in the context of Simpkins' mortgage contract. Wells Fargo argues that a relationship between a mortgagor and a mortgagee does not create a fiduciary relationship, supporting its contention with *Teachers Ins. & Annuity Ass'n of Am. v. LaSalle Nat. Bank*, 295 Ill. App. 3d 61, 71 (Ill. App. 1998). However, the court also states, "[w]here the alleged fiduciary relationship does not exist as a matter of law, the party claiming that a fiduciary relationship exists must plead facts from which a fiduciary relationship arises." *Id.*

One of this Court's sister courts examined the issue of a fiduciary duty between a mortgagee and a mortgagor in *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863 (N.D. Ill. 2002).   In *Ploog*, the mortgagor improperly used funds from the homeowner's escrow account.  *Id.* at 873.  The homeowner had a typical contract with her mortgage company.  *Id.*   The court found that the mismanagement of an escrow account could give rise to breach of fiduciary duty cause of action.  *Id.* at 875.  As the court explained, "[m]ortgage contracts carry with them an implied duty of professional competence analogous to the way the duty of good faith and fair dealing is imputed as a term of the contract."  *Id.* (internal quotations and citations omitted).

Here, Simpkins alleged that Wells Fargo, was obliged to hold, manage, and control the escrow funds in trust, and owed a fiduciary duty to plaintiffs and other members of the putative class.  Simpkins contends that Wells Fargo breached its fiduciary duty by using the escrow funds to purchase force-placed insurance policies that were unnecessary and duplicative, and overpriced in order to generate profits to defendants.  Plaintiffs allege these actions were undertaken in bad faith solely for the benefit of the defendants, and caused injury to the plaintiffs.

Because Simpkins has alleged a breach of fiduciary duty based on an agency relationship, the Court finds this is sufficient to withstand a motion to dismiss on this basis.

**Aiding and Abetting**

Defendant American Security urges this Court to dismiss Simpkins' claim for aiding and abetting because it is time-barred under Illinois law, and because there is not a fiduciary duty between a lender and a borrower in Illinois. American Security argues that Simpkins was notified on June 7, 2007 that Wells Fargo was force-placing insurance on her property, and that she filed her initial complaint July 6, 2012, more than five years later.  Hence, American Security contends that Simpkins' claim is time barred.  Simpkins argues that she did not become aware of her claims until she consulted with counsel in June 2012; thus her claims are not time barred.

The discovery rule postpones the beginning of the limitations period to the date when the plaintiff discovers or should have discovered that he or she has been injured.  *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003).  In *Clark*, the Seventh Circuit  noted that the plaintiff could have avoided the appeal if he had "just alleged a specific date of discovery in his reply to the motion to dismiss." *Id.*

Here, Simpkins alleges that she discovered that American Security was providing financial incentives to Wells Fargo in order for Wells Fargo to force-place insurance policies from American Security only after she consulted with counsel "in or around June 2012."  The Court finds dismissal of this count for being time-barred is therefore without merit.

The Court has already discussed the issue of fiduciary duty above.  The issue is no different as it relates to Simpkins' allegation of aiding and abetting.  Thus, it is premature to dismiss Simpkins claim for aiding and abetting based on a lack of fiduciary duty between Simpkins and Wells Fargo.

**Illinois Consumer Fraud and Deceptive Practices Act**

Defendants Wells Fargo and American Security both seek this Court's dismissal of Simpkins' count five claim that defendants' business practices violated the Illinois Consumer Fraud Act ("ICFA") and Deceptive Business Practices Act ("DBPA").  Wells Fargo argues that Simpkins fails to allege a violation of the ICFA sufficient to state a claim for relief and should be dismissed.  American Security argues that Simpkins' claim is based on conclusory generic allegations with no specific claim against any particular defendant, and should therefore be dismissed.  Both argue that the claim is time-barred.  As discussed above, the Court finds that Simpkins' claim that she did not discover any of the deceptive acts until June 2012 when she consulted with an attorney is sufficient to foreclose any arguments of claims being time-barred at this stage in the case.

The ICFA prohibits the "misrepresentation or the concealment, suppression or omission of any material fact" conduct of trade or commerce.  815 ILCS § 505/2.  In order to state a claim for violation of the ICFA, Simpkins must allege: 1) a deceptive act or practice, misrepresentation or concealment or suppression of a material fact by Wells Fargo and American Security; 2) Wells Fargo's and American Security's intent that Simpkins rely on the deception, concealment or

misrepresentation; and 3) that the deception, concealment or misrepresentation occurred in the course of conduct involving trade and commerce. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

In this case, Simpkins alleged that Wells Fargo force-placed insurance policies with a provider that charged a significantly higher premium for considerably less coverage than she had herself, in order to "kick-back" some of the money to Wells Fargo. None of these facts were disclosed to her. Simpkins further claims that the force-placed insurance policies were back dated to cover time periods that were already passed and for which the lender had no risk of loss. Simpkins also alleges that she and other homeowners relied on Wells Fargo to act reasonably to protect the homeowner's property and not to charge far more than a reasonable rate for coverage that protected only the lender's interest in the property and not the borrower's interest. She contends that these deceptive acts were designed to mislead her and other homeowners about the reason for force-placing insurance with only a few particular companies. And lastly, Simpkins alleged in her complaint that these deceptive acts were performed in the conduct of business, trade or commerce in Illinois.

Therefore, the Court finds that Simpkins' complaint sufficiently alleges that defendants violated the ICWA. is not time-barred, and so denies defendants' motion to dismiss on this count.

**National Bank Act**

Wells Fargo argues that the Court should dismiss Simpkins' claims because they are precluded by the National Bank Act, 12 U.S.C. § 21 *et seq.*   Wells Fargo claims that that, as a federally chartered bank, it is permitted to engage in real estate lending and has the power to exercise all incidental powers necessary to engage in the business of banking.   Real estate lending is expressly designated as part of the business of banking.   12 U.S.C. § 371(a).

Simpkins disputes that her claim against Wells Fargo is preempted by the National Bank Act, arguing that the preemption defense has been rejected by other courts in cases similar to this one.   Simpkins contends that because her claims only incidentally affect Wells Fargo's real estate lending powers in a force-placed insurance action, the claims do not unduly burden or impede the bank's ability to engage in the business of lending or insurance-related activities.

Wells Fargo relies on a Ninth Circuit case, *Martinez v. Wells Fargo Home Mortg., Inc.* to persuade this Court that regulations promulgated by the Office of the Comptroller of Currency ("the OCC") "possess the same preemptive effect as the National Bank Act itself."   598 F.3d 549, 555 (9th Cir. 2010).   Indeed, the *Martinez* court holds that state laws that "obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers" are preempted.  *Id.*   However, the *Martinez* court also holds:

> State laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its real estate lending powers. Such laws are not designed

> to regulate real estate lending, nor do they have a disproportionate or other substantial effect on lending. In fact, the OCC has specifically cited [the state's unfair competition law] in an advisory letter cautioning banks that they may be subject to such laws that prohibit unfair or deceptive acts or practices.

*Id.*  The United States Supreme Court, in *Watters v. Wachovia Bank*, held that "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA."  550 U.S. 1, 11 (2007).  Further, states are allowed to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers.  *Id.* at 12.

In her complaint, Simpkins alleges that Wells Fargo is in breach of its fiduciary duty for misappropriation of the funds in its borrowers' escrow accounts, and breach of the implied covenant of good faith and fair dealing for its actions of placing significantly overpriced force-placed insurance with pre-contracted insurers in order to receive a portion of the funds back as a profit. Prohibiting these actions does not rise to the level of a significant burden on a national bank's own exercise of its real estate lending power, nor does it curtail or hinder a national bank's efficient exercise of any other power, incidental or enumerated under the National Bank Act.  *See Watters, 550 U.S.* at 13. Therefore, the Court denies Wells Fargo's motion to dismiss Simpkins' claims on the basis that they are preempted by the National Bank Act.

**Standing and Venue Against Biddison and Cockes**

Defendant Assurant seeks this Court's dismissal of the complaint against both Biddison and Cockes based on lack of standing and improper venue. Assurant contends that standing, as characterized under Article III of the United States Constitution requiring a case or controversy, is lacking because Assurant is not an insurance company, has never sold an insurance product, and is not the cause of any injuries to any of the plaintiffs. Further, Assurant argues that since it is not a resident of Illinois, 28 U.S.C. § 1391(c) is inapplicable and does not support the claims of Biddison and Cockes.

Biddison and Cockes oppose Assurant's motion to dismiss based on standing and venue, arguing that they have Article III standing to bring this action against Assurant and that venue is proper in the Southern District of Illinois because they are properly joined to the first amended complaint under Rule 20(a)(1) of the Federal Rules of Civil Procedure.

**Standing**

The Seventh Circuit notes three requirements to establish Article III case-or-controversy standing: (1) Plaintiff has suffered an injury in-fact; (2) fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable decision from the court. *Booker-El v. Sup't, Indiana State Prison*, 668 F.3d 896, 899 (7th Cir. 2012) (internal quotations and citations omitted).

In the case before the Court, in their first amended complaint, the plaintiffs alleged an injury in fact against Assurant. Plaintiffs claim they were required to

pay for force-placed insurance policies provided by Assurant or an insurance provider subsidiary of Assurant, that in turn paid a fee back to Wells Fargo for placing the insurance.  Plaintiffs contend that their injury was in being charged rates that were significantly higher than their previous policies in order to provide the necessary funds for the "kick-back," and for insurance policies backdated for periods of time that was past and for which no loss had occurred.

Additionally, plaintiffs claim the injury is traceable to Assurant.  Plaintiffs allege that Assurant, acting with Wells Fargo, provided grossly overpriced homeowners insurance policies as force-placed insurance to Wells Fargo borrowers, and then paid commissions to Wells Fargo for the referral of business. Plaintiffs contend this arrangement establishes that their injury is directly traceable to Assurant's conduct, and that Assurant was a substantial part of the "scheme" to defraud plaintiffs.

Lastly, plaintiffs' injury can be redressed by a favorable decision from the court.  If plaintiffs prevail in their lawsuit, they may recover actual damages in the form of restitution and/or disgorgement of defendants' overcharged premium payments.  Plaintiffs also seek an imposition of a constructive trust, attorneys' fees and costs, and a judgment that defendants must cease the activities described in their complaint.  As plaintiffs have adequately alleged the requirements of Article III case-or-controversy standing, the Court denies Assurant's motion to dismiss based on lack of standing.

As to Assurant's assertion that it does not sell insurance and that plaintiffs sued the wrong party, the Court notes that Assurant's filings indicate that it is a provider of insurance products, and therefore a proper defendant to plaintiffs' lawsuit.  In the first amended complaint, plaintiffs claim that Assurant is one of the largest providers of lender-placed or force-placed insurance in the nation.  Assurant's 2011 Annual Report and Form 10-K claims that it is a provider of specialized insurance products and that its largest product line is homeowners insurance offered through its lender-placed programs.  Furthermore, Assurant states its mission is "to be the premier provider of specialized insurance products and related services in North America and select worldwide markets."

Based on its reading of Assurant's annual report, the Court finds it disingenuous for Assurant to claim that it is "not an insurance company . . . does not provide lender-placed insurance or any services relating to lender-placed insurance . . ."  Therefore, the Court denies Assurant's motion to dismiss on this basis.

**Venue**

For the purposes of a motion to dismiss for improper venue pursuant to Rule 12(b)(3), the court must take all allegations in the complaint as true unless contradicted by the defendants' affidavits.  *Estate of Moore v. Dixon*, 460 F. Supp. 2d 931, 935 (N.D. Ill. 2006).  However, if there are disputed facts, the court must resolve all factual disputes and draw all reasonable inferences in the plaintiff's favor.  *Id.* (internal quotations and citations omitted).

Pursuant to 28 U.S.C. § 1391(b), a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Here, plaintiffs Biddison and Cockes are properly joined under Rule 20(a)(1)(B) to the complaint with Simpkins, a resident of Belleville, Illinois, which is within the Southern District of Illinois.  Rule 20(a)(1)(B) states that "[p]ersons may join in one action as plaintiffs if any question of law or fact common to all plaintiffs will arise in the action."  All of the plaintiffs allege a nearly identical occurrence of Wells Fargo's placing of force-placed insurance on their respective properties with a substantially higher premium than their previous coverage through Assurant and its subsidiaries.  Wells Fargo Bank is a national banking association registered to do business in Illinois, and Wells Fargo Home Mortgage has multiple locations throughout the state to service mortgage loans for Illinois homeowners and homeowners in other states.  Simpkins' allegations against Wells Fargo arose from transactions in Illinois that were contracted with Assurant and its subsidiaries.  Thus, venue is proper in

the Southern District of Illinois.   The Court denies Assurant's motion to
dismiss based on improper venue.

**New York General Business Law § 349**

Wells Fargo and American Security seek to dismiss Biddison's claim for
violation of the New York General  Business Law § 349, arguing that he states no
claim that Wells Fargo has engaged in any materially misleading conduct under
the Act.   Wells Fargo argues that Biddison did not sufficiently allege that Wells
Fargo engaged in materially misleading conduct, nor that he suffered an injury
from any such conduct.   American Security argues that because the allegedly
excessive premium was disclosed to Biddison, he cannot sustain a claim for
deceptive practices.   Biddison disputes Wells Fargo's and American Security's
claims, contending that he fully met the requirements to show a violation of the
law in the first amended complaint.

Under the New York General Business Law, § 349, "deceptive acts or
practices in the conduct of any business, trade or commerce or  in  the  furnishing
of any service in this state are hereby declared unlawful." *Pelman ex rel. Pelman
v. McDonald's Corp.*, 396 F.3d 508, 511 (2nd Cir. 2005).   Since § 349 extends
well beyond common-law fraud to cover a broad range of deceptive practices, and
because a private action under § 349 does not require proof of the same essential
elements as common-law fraud, an action under § 349 is not subject to the
pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need
only meet the bare-bones notice-pleading requirements of Rule 8(a), Fed. R. Civ.

P.  *Id.*  A plaintiff seeking to recover under § 349 is required to show only that the practice complained of was objectively misleading or deceptive and that he had suffered injury "as a result" of the practice.  *Id.  See also Stutman v. Chemical Bank*, 731 N.E. 2d 608, 611 (N.Y. App. 2000) (holding that plaintiffs need only show that because of defendant's deceptive act, they suffered a loss).

In this case, Biddison alleged that Wells Fargo committed a deceptive practice by force-placing insurance on his property and that, as a result, he suffered a loss by paying substantially higher premiums for the policy.  Biddison's allegations in the complaint are sufficient to state a claim under the New York General Business Law.  Therefore, the Court denies Wells Fargo's motion to dismiss Biddison's claims on this basis.

### Filed Rate Doctrine

Defendants Wells Fargo and American Security seek to dismiss Biddison's claims under the New York filed rate doctrine.  Defendants claim that since the state regulates insurance rates, including the rates at issue in the complaint, the filed rate doctrine bars any recovery for allegedly excessive lender-placed insurance.  Biddison disputes this argument, contending that he is not challenging the rates filed by Wells Fargo's insurers, but rather the method and criteria used to select the insurers, Wells Fargo's manipulation of the process of force-placed insurance, and the "kickbacks" Well Fargo receives because of the manipulative process.

Under the filed rate doctrine, a rate that is approved by the governing regulatory agency is viewed as per se reasonable and unassailable in judicial proceedings brought by ratepayers. *Wegoland Ltd. v NYNEX Corp.*, 27 F.3d 17, 18 (2nd Cir. 1994). *See also Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3rd Cir. 2009). The purpose of the filed rate doctrine is not that the rate mirrors a competitive market, nor that the rate is reasonable or thoroughly researched, it is that the filed rate is the only *legal* rate. *Coll v. First American Title Ins. Co.*, 642 F.3d 876, 887 (10th Cir. 2011). The purpose behind the filed rate doctrine is to prevent price discrimination, to preserve the role of agencies in approving, and to keep courts out of the rate-making process. *Id.* (internal quotations and citations omitted).

But recently, some courts have begun to view cases such as the one before the Court, not so much as a challenge to the legal rates charged, but rather as a challenge to the manner in which the defendants select the insurers, the manipulation of the force-place insurance policy process, and the impermissible kickbacks included in the premiums. *Kunzelmann v. Wells Fargo Bank, N.A.*, 2012 WL 2003337, at * 3 (S.D. Fla. June 4, 2012). *See also Gallo v. PHH Mortg. Corp.*, 916 F. Supp. 2d 537, 545-46 (D. N.J. 2012); *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009); *Alexander v. Washington Mut., Inc.*, 2008 WL 2600323, at *2 (E.D. Pa. June 30, 2008); and *Stevens v. Citigroup*, 2000 WL 1848593, at * 1 (E.D. Pa. Dec. 15, 2000).[1]

---

[1] The Court has read Assurant's case submitted as supplemental authority, *Roberts v. Wells Fargo*, from the Southern District of Georgia. To the extent that

Here, as in the cases above, plaintiffs are challenging the lawfulness and purpose of payments that Wells Fargo received in the form of commissions, kickbacks, or other financial benefits, pursuant to several alleged pre-arranged agreements designed to maximize profits for defendants.   Defendants, as the parties bearing the burden to show dismissal is justified under this doctrine, have not given this Court any authority to demonstrate that "such pre-arranged side agreements are similarly filed with, approved by, or regulated and monitored in some way by a governing regulatory agency, such as the Department of Insurance, much like the filed rates for hazard insurance policies themselves."  *See Gallo*, 916 F. Supp. 2d at 546.  Therefore, the Court finds that any payments made to Wells Fargo pursuant to such side agreements are not subject to the regulatory scheme in the same way that insurance rates are.  Plaintiffs should not be barred under the filed rate doctrine from challenging conduct which is not otherwise addressed by a governing regulatory agency, particularly where defendants bear the burden on the issue of dismissal.  Defendants' motion to dismiss on the basis that plaintiffs' claims are barred by the filed rate doctrine is denied.

**Jurisdiction**

Finally, the first amended complaint claims this Court has jurisdiction based on 28 U.S.C. § 1332(d)(2).  The Court notes that citizenship has been established for all four of the defendants; however, the amended complaint alleges

court declined to decide whether the state's filed rate doctrine barred the plaintiff's claims, this Court does not agree that the filed rate doctrine was intended to sanction the duplicative coverage, back dated policies, and kickbacks that are alleged in the complaint filed by Simpkins, Biddison and Cockes.

only the residence of the three plaintiffs, and is silent as to each plaintiff's respective state citizenship. According to the Seventh Circuit, "[r]esidence and citizenship are not synonyms and it is the latter that matters for purposes of the diversity jurisdiction." *Myerson's v. Harrah's East Chicago Casino* 299 F.3d 616, 617 (7th Cir. 2002). *See also Held v. Held*, 137 F.3d 998, 1000 (7th Cir. 1998) (allegations of residence are insufficient to establish diversity). Therefore, plaintiffs have up to and including September 9, 2013, to amend their complaint to establish the citizenship of each plaintiff.

## IV.   Conclusion

For the foregoing reasons, in the Court's viewing of the facts most favorable to the plaintiffs, the Court **DENIES** all of defendants' motions to dismiss (Docs. 91, 93, 95, 97, 102, and 124). Further, the Court **ORDERS** plaintiffs to amend their complaint no later than September 9, 2013 to allege the citizenship of each plaintiff.

**IT IS SO ORDERED.**

Signed this 26th day of August, 2013.

Digitally signed by David R. Herndon
Date: 2013.08.26 14:09:33 -05'00'

**Chief Judge**
**United States District Court**