IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DEBRA SIMPKINS, MARK BIDDISON,
and JAMES COCKES, individually and
on behalf of all others similarly situated,

Plaintiffs,

v.

WELLS FARGO BANK, N.A., WELLS
FARGO INSURANCE CO., ASSURANT,
INC., STANDARD GUARANTY INSURANCE
CO., and AMERICAN SECURITY
INSURANCE CO.,

Defendants.                             No. 12-cv-00768-DRH-PMF

MEMORANDUM AND ORDER

HERNDON, Chief Judge:

        I.      Introduction and Background

Now pending before the Court are defendant Well Fargo's motion to sever claims (Doc. 100) and its memorandum in support (Doc. 101), and defendants' Assurant, Inc., Standard Guaranty Insurance Company, and American Security Insurance Company's joint motion to sever (Doc. 118) and memorandum in support (Doc. 119). Plaintiffs oppose Wells Fargo's motion (Doc. 127) and Assurant, Standard Guaranty and American Security's motion (Doc. 134).

**The Plaintiffs**

Plaintiff Debra Simpkins, a resident of Belleville, Illinois, claims that when her homeowners policy was not renewed effective April 30, 2007, Wells Fargo force-placed a temporary 60-day insurance binder with American Security at an

annual premium of $1,141.00.  Simpkins claims the force-placed policy was more than twice the cost of her previous policy and provided less coverage, protected only Wells Fargo, and covered only the structure of the home.  Although the policy was not placed until June 7, 2007, it was backdated to April 30, 2007.  On July 17, 2007, Simpkins claims Wells Fargo force-placed an additional policy on her dwelling effective from April 30, 2007 through April 30, 2008 with the same annual premium of $1,141.00 as the 60 day force-placed policy, and the same coverage only for the dwelling and protecting only Wells Fargo.  Simpkins contends that Wells Fargo received a commission or other financial benefit from Assurant and/or American Security connected to the force-placed policy.  Subsequently, Simpkins obtained her own non-force-placed hazard insurance policy and on October 18, 2007, Wells Fargo issued a notice of cancellation as to the previously force-placed coverage through American Security.  Simpkins subsequently filed for Chapter 7 bankruptcy relief on January 8, 2008.  At the time she filed for bankruptcy, Simpkins was unaware of her claims against defendants.

On May 10, 2010, plaintiff Mark Biddison, a resident of New York, received a notice of non-renewal of his homeowner's insurance policy that his coverage would expire on July 3, 2010.  Wells Fargo filed a foreclosure proceeding against Biddison's property in September 2010.  Subsequently, Wells Fargo force-placed an insurance policy through American Security on Biddison's property.  Biddison claims his force-placed policy was backdated to July 3, 2010 and Wells

Fargo added a debit of $4,483.00 to his escrow account to cover the cost of the coverage. Biddison claims that the force-placed policy had a premium significantly higher than that of his previous policy, and provided coverage only to the structure of the house and protected Wells Fargo only. On July 27, 2011, Wells Fargo accepted Biddison's application for a loan modification. When he received his loan modification settlement statement, Biddison's outstanding principal had increased over $30,000.00, including a negative balance from his escrow account, which included the charges for the force-placed insurance policy. In June 2012, Biddison obtained his own homeowners policy for $1,356, for substantially more coverage. Biddison contends that Wells Fargo received a financial benefit for force-placing the insurance that is a breach of fiduciary duty and contrary to the doctrine of good faith and fair dealing.

Plaintiff James Cockes, a resident of Frisco, Texas, had a homeowners insurance policy in place from July 28, 2010, until July 28, 2011. The policy had an annual premium of $2,401.42. On or about September 28, 2011, Wells Fargo sent Cockes a letter stating that its records indicated his policy had lapsed in September 2011, and that Standard Guaranty had issued temporary coverage for two months at an annual cost of $7,688.65. The coverage extended only to the building and structure. Cockes secured his own policy to cover October 15, 2011 to October 15, 2012, with an annual premium of $2,563.00. Cockes alleges that although he provided proof of this to Wells Fargo, it force-placed a policy from Security Guaranty backdated more than a year to cover Cockes' property from

September 2010 to September 2011 and charged his escrow account $7,688.65. Cockes also alleges that Wells Fargo received a financial benefit from force-placing the insurance coverage with Security Guaranty.

**The Defendants**

Defendants are Wells Fargo Bank, which originates and/or services residential mortgage loans, sometimes doing business as Wells Fargo Home Mortgage; Wells Fargo Insurance, an affiliate of Wells Fargo Bank and Wells Fargo Home Mortgage (collectively "Wells Fargo"); Assurant, Inc.; American Security Insurance Company; Standard Guaranty Insurance Company; and any other force-place insurance provider subsidiary of Assurant.

**The Complaint**

This is a putative class action brought by plaintiffs Simpkins, Biddison, and Cockes, on behalf of themselves and other similarly situated plaintiffs. Plaintiffs filed this case July 6, 2012 and amended their complaint on January 15, 2013. All of the plaintiffs allege they have residential mortgage loans that originated with Wells Fargo Home Mortgage, and allege that they were required to pay for lender-placed or "force-placed" hazard insurance policies provided by Assurant, American Security, Standard Guaranty or other force-placed subsidiaries of Assurant. Additionally, plaintiffs allege Wells Fargo charged them for backdated policies and that Wells Fargo received a commission for the significantly higher priced policies providing substantially less coverage.

Plaintiffs alleged six counts in their complaint: (1) breach of contract including breach of the implied covenant of good faith and fair dealing, against Wells Fargo; (2) unjust enrichment/disgorgement, against all defendants; (3) breach of fiduciary duty/misappropriation of funds held in trust, against Wells Fargo; (4) aiding and abetting a breach of fiduciary duty, against Assurant, Standard Guaranty, and American Security; (5) violations of the Illinois Consumer Fraud and Deceptive Practices Business Act, 815 ILCS 505/1, *et seq.*, against all defendants on behalf of the Illinois class; and (6) violations of New York General Business Law § 349, against all defendants on behalf of the New York class.

On February 22, 2013, Wells Fargo filed their motion to sever the claims of Biddison and Cockes. On March 15, 2013, Assurant, Standard Guaranty, and American Security filed their respective motion to sever Biddison's and Cockes' claims. Plaintiffs oppose Wells Fargo's motion to sever (Doc. 127) and Assurant, Standard Guaranty and American Security's motion to sever (Doc. 134). For the following reasons, the Court **DENIES** defendants' motions to sever (Docs. 100 and 118).

## II. Standard

Pursuant to Rule 20 of the Federal Rules of Civil Procedure:

(1) *Plaintiffs*. Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

    (B) any question of law or fact common to all plaintiffs will arise in the action.

Rule 20(a)(1), Fed. R. Civ. P. "The purpose of Rule 20(a) in permitting joinder in a single suit of persons who have separate claims, albeit growing out of a single incident, transaction, or series of events, is to enable economies in litigation." *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

As to defendants' motions to sever claims, it is within the district court's broad discretion whether to sever a claim under Rule 21. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). A Rule 21 severance occurs when a lawsuit is divided into two or more separate and independent or distinct causes with judgment entered independently. *See* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2387 (3rd ed. 2008). Separate trials of claims originally sued upon together will usually result in the entry of one judgment. *Id.* The trials remain under the authority of the original solitary action. *Id.*

### III.   Analysis

In its motion to sever Biddison's and Cockes' claims, Wells Fargo claims that the two parties are misjoined with Simpkins, and fail to satisfy the required standards for permissive joinder under Rule 20 of the Federal Rules of Civil Procedure. Further, Wells Fargo argues that plaintiffs' claims do not arise from the same transactions or occurrences because they each had separate mortgage documents, separate defaults on their homeowners insurance, and separate

communications with defendants. Finally, Wells Fargo contends that Biddison's and Cockes' claims have no logical relationship to Simpkins' claims and the state of Illinois.

In their motion to sever, Assurant, Standard Guaranty and American Security also claim that the two parties are misjoined with Simpkins, and fail to satisfy the required standards for permissive joinder under Rule 20 of the Federal Rules of Civil Procedure. Further, these three defendants contend that plaintiffs' claims arise from different insurance transactions, involving different issuers, on different properties, in different states, and triggered by different circumstances. Lastly, these defendants contend that plaintiffs' claims present uncommon questions of law and fact, and that misjoinder of the claims presents a substantial risk of prejudice and confusion by producing a "fictional composite claimant" before the jury.

Plaintiffs oppose both motions, arguing that the claims of each plaintiff revolve around a central question of whether the agreements Wells Fargo and Assurant entered into for the provision of force-placed insurance are genuine or "illicit mechanisms to funnel improper payments and kickbacks to Wells Fargo" at borrowers' expense. Further, plaintiffs argue that they bring identical claims against identical defendants involving a common scheme.

First, defendants argue that the parties are misjoined under Rule 20(a)(1) of the Federal Rules of Civil Procedure because plaintiffs' claims do not arise from the same transaction or occurrence, but from different transactions occurring at

different times in different states. Further, defendants argue that plaintiffs' claims do not raise a common question of fact or law, in that each plaintiff's claim will require "an individualized evaluation." Plaintiffs dispute this argument contending that common issues of fact and law predominate and are central to the resolution of the case.

The Seventh Circuit accords wide discretion to a district court's decision concerning the joinder of parties. *Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001). This discretion allows a trial court to consider, in addition to the requirements of Rule 20, "other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness." *Id.* (internal quotations and citations omitted).

In this case, the Court notes that several common issues of fact prevail: (1) whether defendants had agreements among themselves that Wells Fargo would refer force-placed insurance only to specific insurers in exchange for commissions paid back to them from the insurers; (2) whether Wells Fargo actually received payments in any form from the insurers in exchange for placing insurance with the insurers; (3) whether Wells Fargo received other financial benefits from the force-placed insurance providers such as insurance monitoring, tracking, and processing services; (4) whether Wells Fargo had a policy of improperly backdating insurance policies: (5) whether Wells Fargo force-placed unnecessary or duplicative insurance policies; (6) whether Wells Fargo and the insurers

provided force-placed insurance policies whose cost exceeded the value of the insurance provided to the homeowners; and (7) whether defendants' conduct comprised an unconscionable business practice.

Additionally, there are several common issues of law: (1) whether Wells Fargo breached the implied covenant of good faith and fair dealing with respect to plaintiffs' mortgages; (2) whether all the defendants were unjustly enriched by the alleged agreements to force-place insurance with specific insurers; (3) whether the alleged agreements between the defendants constituted deceptive acts or practices; (4) whether Wells Fargo breached its fiduciary duty to plaintiffs; (5) whether the insurers induced or participated in Wells Fargo's breach of fiduciary duties; (6) whether defendant are liable to plaintiffs for damages, and if so what measure; and (7) whether plaintiffs are entitled to declaratory, injunctive, or other equitable relief.

As to Assurant, Standard Guaranty, and American Security's assertion that joinder of the claims would result in prejudice to them since plaintiffs could present a "fictional composite" claimant before the jury that would be "much stronger than plaintiffs' individual actions would be," the defendants fail to offer any evidence of this claim. Instead, they rely on a Fourth Circuit case that is neither instructive nor analogous. *Broussard v. Meineke Discount Muffler Shops, Inc.* was a case involving ten franchisees suing the franchisor over purported advertising commission and strategy disputes. 155 F.3d 331 (4th Cir. 1998). In *Broussard*, the court stated that the plaintiffs portrayed the class as a "large,

unified group that suffered a uniform collective injury." *Id.* at 345. In reality, the franchisees were bound by very different contracts, depending on when each had purchased the franchise. *Id.* at 346. Therefore, the Court does not find this case instructive here.

Based on the foregoing, the Court finds that common issues of fact and law weigh against severing Biddison's and Cockes' claims from Simpkins' claims. "Multiple plaintiffs are free to join their claims in a single suit when "*any* question of law or fact common to all plaintiffs will arise in the action."" *Lee v. Cook County, Ill.*, 635 F.3d 969, 971 (7th Cir. 2011) (emphasis in original, internal citations omitted).

Rule 21 generally applies when the claims asserted by joined parties do not arise out of the same transaction, occurrence or series of transactions or occurrences. *See* 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1683 (3rd ed. 2008). Here, the alleged claims all arise from the same series of occurrences: each plaintiff had a mortgage through Wells Fargo; each plaintiff's homeowners policy lapsed; each plaintiff had a substantially higher priced force-placed insurance policy put in place by Wells Fargo and paid from his or her escrow funds. Thus, the Court finds that severing the claims is not appropriate under Rule 21. Accordingly, the Court **DENIES** defendants' motions to sever (Docs. 100 and 118).

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Wells Fargo's motion to sever the claims of Biddison and Cockes (Doc. 100), and Assurant, Standard Guaranty, and American Security's motion to sever the claims of Biddison and Cockes (Doc. 118).

**IT IS SO ORDERED.**

Signed this 28th day of August, 2013.

Digitally signed by David R. Herndon
Date: 2013.08.28 16:13:14 -05'00'

**Chief Judge**
**United States District Court**